Bouldin, J.
A preliminary question has been discussed at the bar in this case, and will be first considered, viz: whether the appeal, when applied for, was barred by the statute of limitations.
The decree was rendered on the 10th of October 1868, and the appeal was not allowed until the 5th day of October 1871, being eight years, less five days, after the decree was pronounced. The law in force when the decree was rendered, limited appeals to jfive years; that in force when the appeal was granted, limited appeals to two years; so that under either limitation, the appeal was barred, unless protected by some legislative saving or exception.3 Is there any such saving ? I think there is.
"Without relying on the ordinance ofLthe Yirginia convention of 1861, ordaining a stay law, and suspending during its operation the statutes of limitation, it will be seen that the Legislature, at its session of 1865-6, by the act of March 2d, 1866, entitled “ an act to preserve and extend the time for the exercise of certain civil rights and remedies,” Sess. acts p. 191, enacted, “that the period between the seventeenth day of April 1861 and the passage of this act, shall be excluded from the computation of the time within which, by the terms or operation of any statute or rule of law, it may be neces' sary to commence any action or other proceeding, or to do any other act to preserve or to prevent the loss of any civil right or remedy,” &c.,&c. The period thus excluded from computation, is further extended, in cases of appeal, “ to six months after a supreme court of appeals shall be *861 organized under the present government.” Under the operation of this law, which is very clear and comprehensive in its terms, the statute of limitations was suspended from a time long anterior to the rendition of the decree in this case down to a period of rather more than six months after the passage of the act; for a court of appeals was in fact duly organized very soon thereafter; so that the limitation did not, under the operation of that law, begin to run against this appeal sooner than the last mentioned date. Still, as that date certainly accrued before the end of the year 1866, and as by the act of the 2d day of March 1867, Sess. acts 1866-7, the right of appeal was limited to two years, and the appeal was not ■ allowed until October 5, 1871, it would still be barred unless protected by some other legislative saving. Is there such other saving ? I am of opinion that there is.
On the same day on which the saving act .first above mentioned was passed, there was enacted by the same Legislature, another law of grave interest and importance to the people of Virginia. I allude to the act known as the stay law, Sess. acts 1865-6, ch. 69, p. 180. The purpose and effect of the two laws thus passed on the same day, were wholly dissimilar. The former had relation almost exclusively, to time which was passed, and its relation to, and eflect upon, existing and accruing rights; whilst the latter was in all respects prospective. The object of the former was merely to exclude from the computation of the period of limitation the time during which a desolating war was raging, and during a temporary disorganization of courts of justice consequent thereon. The exclusion,, therefore, as the war was over, embraced no time after,, but was necessarily limited to the date of the act, extended for a -few months longer to reach the case of a-disorganized court. And the second section of the act: *862 confirmed certain acts of the Confederate Legislature, _ & ’ passed for the same purpose.
The purpose and effect of the stay Law, on the other hand, was essentially different. Its purpose was to prevent the sacrifice of the property of the citizen, by sales under execution, in the impoverished condition of our people, and to save them from the expenses of law suits, as far as practicable, by discouraging litigation. But as indulgence to the debtor might become hazardous to the interest of the creditor, by exposing his claim to the bar of limitation, it became necessary to make some provision by which indulgence might be extended with safety to the creditor; and to effect this, the seventh section of the stay law provided, as follows :
“ The period during which this act shall remain in force shall he excluded from the computation of time in which, by the operation of any statute or rule of law, it may be necessary to commence any proceeding to preserve" or prevent the loss of any right or remedy.” This provision is rather more extensive than the mischief to he prevented required; but it is very clearly in furtherance ot the main objects of the law, viz: the prevention of a sacrifice of property by sales under execution, and the suppression of litigation. It rendered indulgence to the debtor safe to the creditor, so far as lapse of time might he involved; and it will be observed that its practical operation commences exactly when that of the other act may he said in the main to end, namely, the passage of the act. The one provides, in the main, for the exclusion of time which is already past; the other wholly for the exclusion of time yet to come; and is limited only by the duration of the act itself.
This seventh section, I repeat, was evidently intended to protect every person who, in deference to the spirit of *863 the act, should, during its existence as a law, forbear the assertion of any legal right, including, of course, the miportant right of appeal to the Supreme court. An appeal to that court is not only a legal proceeding, but one of the most important and expensive character, and comes, in my opinion, directly within the letter and spirit of the law. To make this more clear I refer to the 9th section of the stay law, which amends and makes part of the law, the sixth section of the act of January 23d 1865, as amended by the act of June 23d, 1865, but repeals in terms the residue of that act, except as to the counties of Accomack and Northampton and the city of Norfolk. There is the same saving in substance in that section as in the seventh; but in terms which, to my mind, preclude argument. They are as follows : “ Nor shall the time during which this act is in force be computed, in any case, in which the statute of limitation may come in question.” The law of which this 6th section constituted apart, is repealed by the stay law of 1866; but the 6th section, with the saving atoresaid, is retained and amended, and made a part of the 9th section of the said stay law of 1866. The two savings explain each other, and are, in my opinion, the same in effect.
I have dwelt at greater length than might seem necessary on the provisions and effect of the act to preserve-certain civil rights and remedies, and of the stay law, because it has been supposed by some that the saving clauses of the latter have no reference to cases of appeal ; but that these are exclusively provided for by the former act. I have endeavored to show, and think I have shown, that this is a mistake; that the class of cases provided for by the two laws is essentially different and distinct; and that the practical effect of the saving in the stay law begins, and was intended to begin, *864 exac^T w^ere that of the other ends. The stay law on its face provides that it shall remain in force until the first of January 1868; but by act of March 2d, 1867, Sess. acts 1866-7 chap. 297, p. 726, the 5th section of the act was so amended as to extend its operation to the 1st of January 1869, down to which time, under the effect of the section already refered to, the operation of the acts of limitation was suspended. But we have seen that before that time, the period of limitation in cases of appeal had been reduced to two years; and more than two years elapsed between the first of January 1869 and the allowance’of the appeal. That is certainly so ; but before two years had expired from the first of January 1869, viz: on the 5th day of November 1870, it was enacted by the General Assembly that the time from the 26th January 1870 to the passage of that act, shall be excluded from the computation of the two years aforesaid; and deducting that' time, the appeal in this case was allowed within the time prescribed by law. Sess. acts, 1870-1, p. 554.
But it has been contended that the amendatory acts of 1867 and 1870, substituting a period of two years, limitation instead of five, in cases of appeal, writ of error and surpersedeas, operate as a repeal of the saving clauses of the stay law. It is very true that these amendatory acts were passed after the passage of the stay law; but they do not expressly repeal the saving clauses of that act, nor indeed do they in terms make the slightest reference to-them. If the saving clauses of the latter act be repealed by these amendatory acts, it can only be by implication ; and that implication can only arise in such a case, by absolute repugnancy and irreconcilable conflict between the two laws. In such case the last law must of course stand, and the prior law is repealed. But if there be not such repugnancy and conflict; if by any *865 fair and reasonable construction, both laws can stand together, although relating to the same subject matter, a repeal of the prior law will’not be implied. Sedgwick on Statutory and Constitutional law, p. 121 to 128 inclusive, and authorities cited. Mr. Sedgwick says : “ It is laid down as a rule, that a general statute without negative words, will not repeal the particular provisions of a former one, unless the two are irreconcilably inconsistent.” And he goes on to say, that “ the reason and philosophy of the rule is, that when the mind of the legislator has-been turned to the details of a subject and he has acted upon it, a subsequent statute in general terms, or treating the subject,” (the same subject,) “ in a general manner, and not expressly contradicting the original act, shall not be considered as intended to affect the more particular or positive previous provisions, unless it is absolutely necessary to give the latter act such a construction in order that its words shall have any meaning at all.” The writer then refers to and considers the class of cases in which a prior statute is repealed by implication, and concludes as follows :
“ But though it is thus clearly settled that statutes may be repealed by implication, and without any express words, still the leaning of the courts is against the doctrine, if it be possible to reconcile the two acts of legislature together. It must be known, says Lord Coke, that for as much as acts of parliament are established with such gravity, wisdom and universal consent of the whole nation for the advancement of the Commonwealth,, they ought not by any strained construction, out of the general and ambiguous words of a subsequent act, to be abrogated : Sed hujus modi statuta, tanta solemnitate etprudentia edita, (as Borteseue speaks, ch. 18, folio 21,) ought to be maintained and supported with a benign and favorable construction. So, in this country, on the same prin *866 ciples, it has been held, that laws are presumed to be passed with deliberation and with full knowledge of all existing ones on the same subject; and it is therefore but reasonable to conclude that the legislature in passing a statute, did not intend to interfere with, or abrogate any prior law relating to the same matter, unless the repugnancy between the two is irreconcilable; and hence a repeal by implication is not favored. On the contrary, the courts are bound to uphold the prior law, if the two acts may well subsist together.”
This is the rule of law as laid down by Mr. Sedgwick, even in cases where the two acts refer plainly to the same subject matter. But such is not the fact with the two acts under consideration. They not only do not refer to the same subject matter, but in their scope and effect are essentially separate and distinct. The saving clauses in the stay law are not in any sense or to any extent, statutes of limitation. They only prescribe a rule of computation of time to apply to an abnormal state of the country, and which, during that state, shall apply to all statutes of limitation whatsoever, without distinction. This rule of computation is in perfect harmony with all statutes of limitation, whether existing at the date of its enactment, or passed thereafter. It does not interfere with or alter in the slightest degree, the period of limitation. It only establishes a mode of computation, by which the period of limitation may be ascertained. The amendatory statutes, on the other hand, have nothing to do with the computation of time. They only amend a section of a pre-existing law prescribing a period of limitation, changing by the amendment, a previous limitation of five years to two years, and saying nothing at all about the rule of computation; but leaving the section as amended to be treated as a section of the original act, subject to all the rules of construction and computation *867 to which that act is subject. The several acts, instead of being in conflict, are, in my opinion, m perfect harmony with each other; and of course, the former is not such circumstances repealed by the latter.
But another question arises on the facts of this case touching the question of limitation. By the statutes in force when this appeal was allowed, the period within which a petition for appeal, &c. could be presented, and that within which the appeal must be perfected, were the same. In each case the limitation was, as a general rule, as it now is, two years from the date of the judgment or decree. How it appears from the certificate of the clerk of this court, in this case, that the appeal was not perfected by the execution of bond as required by law until the 26th of April 1862, three years, three months and twenty-six days after the date of the decree appealed from, and more than six months after the expiration of the period, within which alone was it lawful for this court to award an appeal. In that state of facts the appeal would necessarily be dismissed, but for a rather incautious proviso in the section limiting the time in which appeals may be perfected, not found in the section limiting the right of appeal. By the former, being the 17th section of ch. 182 of Code of 1860, as amended by the act of June 23d, 1870, Sess. acts 1869-70, ch. 171, p. 224, after prescribing a limitation of two years from the date of the judgment or decree, to the issuing of process on any appeal therefrom, it is enacted that “ the appeal, writ of error or supersedeas shall be dismissed whenever it shall appear that two years have elapsed since the said date, before the record is delivered to such clerk, or before such bond is given as is required to be given before the appeal, writ of error or supersedeas takes effect: provided however, that section twenty-six of chapter one hundred and eighty-two of the Code of *868 I860, instead of. this section, shall remain in full force, and apply to cases in which the appeal, writ of error or supersedeas may be to any judgment or decree rendered before the passage of this act.” There is no such pro-T^so *n ^ se^i°u of the same act in relation to the time in which a petition for appeal must be presented to the court of appeals or the judges thereof, nor in the act'aforesaid of November 5th, 1870, amending the same; and thus in many cases, as in this case, a striking incongruity between the acts will be presented. But the proviso in the 17th section is too plain and imperative tobe disregarded, and it must be enforced. Lex ita seriptx est; and it is not competent to this court, by construction, to amend or repeal it. By the 26th section of chapter 182, of Code of 1860, which in this respect is the law of this case, the limitation is five years instead of two, being in fact the same, with the limitation at that time, to the right of appeal; and five years not having yet elapsed since the first day of January 1869, when the statute of limitation commenced running, the appeal, in my opinion, was regularly perfected, and is properly before us.
This brings us to the consideration of the propriety of the decree appealed from. That decree, and the previous decree of the 13th of May 1863, confirming the sale of real property, and ordering the same to be conveyed to the purchaser, were made in the absence of important and essential parties whose interest appears on the face of the record. It appears on the face of the decree of October 11,1862, that Robert J. Crockett, one of the original defendants in the suit below, and joint and equal owner with his co-defendant S. S. Crockett, died pending the suit, unmarried and intestate,' leaving his brother the said S. S. Crockett, a sister Isabella C. Brown, wife of William H. Brown, and the children *869 of Charles H. and Jane A. Saufiley, of unknown names and number, his only heirs at law and distributees. These persons were ordered by the decree last mentioned to be brought before the court by scire facias and proper proceedings thereon, yet without awaiting the execution and return of the scire facias or other proceedings, the court, by the same decree, by consent of the parties before the court, ordered a sale of the property; which was made and confirmed by the court, without any return of scire facias executed or evidence of publication against the heirs and distributees aforesaid'of Eobert S. Crockett, and without further notice of them. In this, there was manifest error. It is unnecessary, at this day, to cite authority for the familiar proposition, that in a court of equity all persons must be made parties who have a material interest in the cause. “All persons materially interested in the subject of controversy ought to be made parties in equity; and if they are not, the defect may be taken advantage, of either by demurrer or by the court at the hearing.” Clarke v. Long, 4 Rand. 451. But as I have already said, it is needless to cite authority for a proposition so familiar and well established. Eor is it necessary to cite authority, for the proposition, which is really the same, that in a proceeding to charge the lands of the defendant, if he die testate or intestate pending the controversy, there can be no further proceeding against the lands of the decedent until his heirs at law or devisees, as the case may be, shall be brought before the [court. It was error, therefore, in this case, to confirm the sale, dispose of the proceeds of the real estate sold, and strike the case from the docket, without having all the heirs of Eobert S. Crockett before the court. They should be brought before the court and allowed the option of assenting to or resisting the confirmation of a sale so irregularly *870 made. I am of opinion, therefore, that the two last decrees entered in the cause should be reversed and annulled, with costs to the appellant; and that the cause be remanded to the Circuit court to be further proceeded in, in accordance with this opinion.

 Judge Staples had been counsel in the cause.